Elna E. Craig, Plaintiff-Appellee, v. Central National Life Insurance Company, an Insurance Corporation, Defendant-Appellant.

Gen. No. 10,141.

Third District.

February 21, 1958.

Released for publication March 10, 1958.

345

James R. DePew, and Joseph W. DePew, both of Bloomington, and Richard Yates Rowe, Jr., of Jacksonville, for defendant-appellant.

Wall, Dalton & Ulbrich, of Bloomington, for plaintiff-appellee.

PRESIDING JUSTICE CARROLL delivered the opinion of the court.

Defendant appeals from a judgment of the Circuit Court of McLean county in favor of plaintiff in an action to recover hospital expenses and surgical operation benefits under the provisions of an insurance policy.

The facts are not in dispute. On January 18, 1956, defendant issued its hospital expense policy to plaintiff. The insuring clause of the policy provides that the company:

## "DOES HEREBY INSURE

the person whose name appears on the last page hereof THE HEAD OF THE FAMILY against loss due to Hospital Expenses, incurred by any member of the Family Group (herein called Member) who is named in the Schedule below, because of bodily injuries received after the effective date hereof or sickness which originates after said date; and, agrees to pay indemnities to the Insured as hereinafter provided."

Part I of the policy contains a schedule of the various hospital expenses which the company agrees to pay. Part II of the policy reads as follows:

346

"PART II. MATERNITY

Hospital expenses incurred by a member as a result of pregnancy or results therefrom, or sickness of the female organs, will be paid for loss which occurs at least nine months after said member became included in the Schedule of Insured Members."

Attached to the policy is a rider entitled "SURGICAL OPERATION BENEFITS" which provides for the benefit to the insured of certain amounts for various surgical operations therein specified. This rider contains the following provision:

"The surgical benefits for sickness provided for herein are payable for sickness originated after this Rider has been maintained in force for four months, but surgical benefits resulting from accident herein covered are payable for injuries sustained while this Rider is in force."

The rider also contains a schedule of operations for which benefits are payable and which includes abdominal surgery.

Plaintiff was in good health when she purchased the policy and rider. On June 4, 1956, plaintiff consulted Dr. Ray Baxter. The occasion for such consultation was the fact that for about three weeks prior thereto plaintiff had been hemorrhaging and was aware of such condition since about the middle of May. Dr. Baxter examined plaintiff, diagnosed her condition, and immediately ordered her hospitalized. On June 6, 1956, she underwent a surgical operation which was referred to by Dr. Baxter, who performed the operation, as a total hysterectomy, that is, the removal of the uterus, tubes and ovaries. According to the Doctor's testimony, the operation was necessitated by the presence of a fibroid tumor of the uterus. Dr. Baxter further testified that fibroid tumors do not occur exclusively in the uterus but are also found in other

347

parts of the body; that such tumors could occur in both the male and female body; that their cause is unknown and the presence thereof is not associated with marriage, childbirth or sex. The Doctor further testified that he had not previously treated plaintiff for the ailment which existed before the operation; that the time required for growth of a fibroid tumor is indefinite; that in plaintiff's case it could have been three months, six weeks, four months or five months but that he did not know.

This action was originally instituted in a police magistrate's court where judgment by default was entered against the defendant. Upon appeal to the circuit court, the defendant offered no proof but filed a certain written defense which in substance is that the sickness for which plaintiff was hospitalized was a sickness of the female organs and excluded by Part II of the policy until plaintiff has been insured by the policy for a period of 9 months and that such sickness originated prior to the time said policy was issued. A trial by the court resulted in the entry of a judgment for plaintiff in the amount of $395.45 which sum represents the hospital and surgical benefits as provided in the policy.

It is defendant's theory as indicated by its written defense, that the hospital expenses for which plaintiff sues, were incurred less than 5 months after the issuance of the policy as the result of sickness of the female organs and by reason of the provisions of Part II of said policy are excluded from coverage thereunder. Defendant's further theory is that the plaintiff's sickness originated before the rider had been in force 4 months and accordingly plaintiff was not eligible for surgical benefits thereunder.

Plaintiff's theory is that Part II of the policy does not exclude her right to recover because the sickness for which she was hospitalized was a fibroid tumor which is not a sickness of the female organs since it

348

may occur elsewhere and in the bodies of both females and males.

It is plaintiff's contention that Clause II of the policy which is captioned "MATERNITY" is ambiguous; that it should be construed most strongly against the insurance company; and that when so construed it includes the sickness which occasioned plaintiff's hospitalization.

■ No rule is more firmly established than that pertaining to the construction of insurance policies in which an ambiguity is found to exist. It is found in numerous decisions of our reviewing courts and is aptly stated in Wolf v. American Casualty Co., 2 Ill.App.2d 124 where the court states:

"The rule relating to the construction of insurance policies has been stated often. It is summarized in Mosby v. Mutual Life Ins. Co. of New York, 405 Ill. 599, 92 N.E.2d 103, as follows:
'Ambiguous provisions or equivocal expressions whereby an insurer seeks to limit its liability will be construed most strongly against the insurer and liberally in favor of the insured. Lenkutis v. N. Y. Life Ins. Co., 374 Ill. 136, 28 N.E.2d 86.' This is a sound rule. It recognizes the realities of the transaction, that is, that the provisions of an insurance policy are not the product of negotiations between insurer and insured but are written by the insurance company and out of necessity, perhaps, submitted for acceptance without change. It is nevertheless the contract of the parties and from it we must find what was meant by the words used."

■ The foregoing rule may not however be interpreted as authorizing the perversion of language which is plain in its meaning to create an ambiguity where none exists. Insurance contracts are to be construed according to the sense and meaning of the terms employed by the parties and in the absence of ambiguity therein, such terms will be taken and understood ac-

cording to their plain and generally accepted meaning. Moscov v. Mutual Life Ins. Co., 387 Ill. 378; Pioneer Life Ins. Co. v. Alliance Life Ins. Co., 374 Ill. 576; Canadian Radium & Uranium Corp. v. Indemnity Ins. Co., 411 Ill. 325.

The defendant insists that the language used in Part II of the policy is not of doubtful meaning and clearly indicates that it was the intention of the parties to thereby exclude liability of plaintiff for hospital expenses incurred by reason of sickness of plaintiff's female organs occuring less than nine months after the effective date of the policy. The question raised by such argument is whether plaintiff, as an average policyholder, reading the policy and taking the language thereof in its ordinary meaning, would understand therefrom that it did not cover hospital expenses resulting from an operation from a fibroid tumor of the uterus, which was unrelated to pregnancy, unless her loss occurred at least nine months after the policy date. The answer to this question depends not only upon the dictionary definition of particular words in the policy taken out of context but upon the meaning which the average person would attach to the phrase or sentence comprised of such words as the same is used in the policy. An examination of the policy discloses certain features thereof which would appear to suggest an answer to the question under consideration. In large type at the top of the first page of the face of the policy and on the back thereof appears the following:

"THIS POLICY PROVIDES PAYMENT FOR·HOSPITAL EXPENSE RESULTING FROM BODILY INJURY, ILLNESS OR CHILDBIRTH TO THE EXTENT HEREIN PROVIDED"

Immediately following this statement is the insuring agreement which provides for payment of hospital expenses incurred because of bodily injuries arising or sickness originating after the date of the policy. The

350

only provision relating to childbirth in the policy is Part II thereof which bears the caption "MATERNITY" in bold face type. Beneath this caption and in smaller type and standard inking appears the language previously quoted herein which defendant contends excepts from the policy risk any sickness of the female organs of the insured unless the same occurs at least nine months after the issuance of the policy.

If, as defendant contends, the words "or sickness of the female organs" as used in the policy are in no way related to pregnancy, then we think it significant that the same are found in a provision which is captioned "MATERNITY." Of equal significance would appear to be the fact that the time element specified in such provision is nine months which coincides with the normal human gestation period. It may well be that defendant's adoption of a time limit of nine months is a mere coincidence but the fact remains that if its incorporation in Part II of the policy induced plaintiff, as an average policyholder, to believe that such part related only to pregnancy, then it must be considered a factor in determining whether the language of provision II is clear and unambiguous. It would also appear that significance attaches to the further fact that the word "childbirth" is included in the statement appearing at the top of the first page of the policy and the only other reference to such subject appears in the body of the policy under the heading "MATERNITY." The heading of the policy plainly indicates the insurer will pay for hospital expense resulting from childbirth as provided in the policy and an insured seeking to ascertain the extent of such coverage would logically believe the paragraph captioned "MATERNITY" to be devoted to such subject and not to sickness in no way related thereto.

There is also to be considered the question whether the phrase "sickness of the female organs" as used in the policy is of doubtful meaning. Defendant contends

351

the term is all-inclusive and is not limited to "pregnancy or the results therefrom." In support of such contention it is asserted that the word "or" immediately preceding "sickness of the female organs" is used to mark off and separate alternate things; that such use indicates one or the other of two different situations and therefore the phrase in question does not mean sickness related in any manner to pregnancy or the results therefrom. Plaintiff on the other hand urges that the doctrine of ejusdem generis applies to Part II of the policy and since the general term "sickness of the female organs" follows the specific terms "as a result of pregnancy or results therefrom" the former is excluded from coverage only if it refers to pregnancy or the results therefrom. Defendant argues that there are two distinct aspects to the exemption clause, namely (1) hospital expenses incurred as a result of pregnancy or results therefrom; (2) or sickness of the female organs; and that since these two aspects relate to things which are incapable of analogous meaning, the principal of ejusdem generis may not be applied. Whether or not the doctrine for which plaintiff contends can be applied does not appear to afford a solution of the question presented. If as defendant argues the two aspects are wholly dissimilar clarity of expression would seem to dictate that they not be combined in a provision relating to maternity.

We find no case in which the courts of this or other jurisdictions have had occasion to construe a health insurance policy containing the exact provision which is found in the one under consideration. Plaintiff cites Businessman's Assurance Ass'n v. Read, 48 S.W.2d 678 (Texas); Russell v. Fraternities Health & Accident Ass'n, 92 Atl. 820 (Maine); Shuler v. American Benevolent Ass'n, 111 S. W. 618 (Mo.); Mutual Ben. Health & Acc. Ass'n v. Blaylock, 143 So. 406 (Miss). Generally speaking, the question involved in these

cases was whether a clause providing in substance that a policy did not cover a disease peculiar to women or of organs of the body not common to both sexes excluded liability of the insurer for a disease or sickness from which men are not immune. Typical of the cases cited is the Businessman's Assurance Ass'n case, supra. The policy sued on in that case contained a clause which excluded recovery by an insured suffering "from disability caused . . . wholly or partly by diseases of the organs of the body not common to both sexes." Plaintiff was operated on for a fibroid tumor of the womb. The court held a fibroid tumor is a disease common to both sexes and therefore was not peculiar to women and was not within the exclusion provision. While the wording of the provision involved differs from that under consideration, nevertheless the holding of the court therein would seem to support the proposition that where an exclusion clause in a policy refers to a disease of the female organs and the proof shows the sickness of the insured to be one which could also attack a male, then such sickness is not excluded. If the term "sickness of the female organs" as it appears in plaintiff's policy, connotes a sickness peculiar to such organs then under the evidence the cited authorities would be applicable. On the other hand if defendant meant the kind of sickness to be only that to which a female is subject, then the description of such sickness is ambiguous.

■ Since an examination of the policy provokes the foregoing inquiries as to the interpretation to be placed upon Part II thereof, there would appear to be a firm basis for concluding that defendant's contention that the language of the policy is plain and unambiguous cannot be sustained. We think the average policyholder seeing the word "MATERNITY" in heavy print above Part II and noting the balance of said part to be in smaller print, could reasonably have

been misled into believing that said part related only to the subject of childbirth or pregnancy. It is conceded that paragraph captions are not required to be drawn so as to include every requirement in the policy but the same should not be repugnant or misleading as to the requirements or coverage of the policy. Mosby v. Mutual Life Ins. Co. of New York, 405 Ill. 599. The limit of nine months appearing in the single sentence comprising Part II would also appear to be a factor inducing plaintiff to believe that all of said sentence refers to maternity. We further think that the average policyholder upon seeing the word "MATERNITY" would naturally and reasonably conclude that the paragraph thereunder related to the subject indicated by the caption and that such average policyholder would associate maternity in a health insurance policy with nothing other than childbirth.

■ In view of the foregoing, we are of the opinion that Part II as it appears in the policy is misleading to the extent that it creates an ambiguity which must be resolved in favor of the plaintiff.

■ Although apparently not included in its statement of defense, the defendant contends on this review, that plaintiff has not established her right to recover under the rider providing for surgical expense benefits because the sickness for which plaintiff was operated originated within four months from the date of the rider. The record discloses that plaintiff became aware of a condition involving hemorrhaging some three weeks prior to the date she consulted Dr. Baxter. Plaintiff was examined and her condition diagnosed on June 4, 1956 which was more than four months after the date of the rider. With reference to policy provisions precluding recovery for sickness originating before a prescribed time, the rule would appear to be that the origin of said sickness is deemed

354

to be the date it first becomes manifest or active or when there is a distinct symptom or condition from which one learned in medicine can with reasonable accuracy diagnose the disease. 53 A.L.R.2d 689 Note; Valencia v. Continental Cas. Co., 127 Neb. 820, 257 N. W. 57; National Cas. Co. v. Hudson, 32 Ala. App. 69, 21 So.2d 568; Union Bankers Cas. Ins. Co. v. May, 87 So.2d 264 (Miss.).

■ There is no proof in this record that would justify a conclusion that because plaintiff was hemorrhaging on a certain date she then became aware of the fact that she was suffering from a fibroid tumor of the uterus. Dr. Baxter's diagnosis was made from an internal examination and it does not appear that he testified as to the symptoms from which the disease might become manifest to a lay person.

In the absence of any evidence to the contrary, we think the origin of plaintiff's sickness was the date upon which Dr. Baxter diagnosed the same.

For the reasons indicated, we are of the opinion that the judgment of the circuit court must be affirmed.

Affirmed.

REYNOLDS and ROETH, JJ., concur.