**Allstate Insurance Company, a Corporation, Plaintiff-Appellant, v. Paul Skawinski and Roland Gordon, Defendants-Appellees.**

**Gen. No. 48,738.**

First District, Second Division.

February 21, 1963.

Rehearing denied March 26, 1963.

Hinshaw, Culbertson, Moelmann & Hoban, of Chicago (John M. Moelmann and D. Kendall Griffith, of counsel), for appellant.

Burton H. Young and Lawrence P. Hickey, of Chicago, for appellees.

MR. PRESIDING JUSTICE BRYANT delivered the opinion of the court.

This is a suit for a declaratory judgment brought by the Allstate Insurance Company to determine whether or not it is liable on a policy of insurance issued to the defendant, Paul Skawinski, for injuries sustained by one Roland Gordon as a direct result of the alleged negligence of the insured, Paul Skawinski.

The policy involved was an automobile insurance policy covering Skawinski's 1955 Plymouth automobile. So far as is pertinent here, Section 1, Part 1 of the policy provided:

> "Allstate will pay for an insured all damages which the insured shall be legally obligated to pay because of:
>> A. bodily injury sustained by any person, and
>> B. injury to or destruction of property, arising out of the ownership, maintenance or use, including loading and unloading, of the owned automobile or a nonowned automobile."

Definition 2 (e) of words used in Part 1 provides that: " 'nonowned automobile' means an automobile, including a trailer, not owned by the named insured or any relative, other than a temporary substitute automobile."

Definition 2 (d) of words used in Part 1 provides that:
" 'temporary substitute automobile' means any automobile, including a trailer, while temporarily used as a substitute for the owned automobile or trailer when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction."

The accident occurred in the following manner. On August 31, 1959, Skawinski, who owned an automobile repair and maintenance business, went to the place of business of Roland Gordon for the purpose of repairing the latter's automobile. In the past, Skawinski had frequently been retained to repair the trucks used in Gordon's produce business. After driving Gordon's car around the block with Gordon sitting beside him, Skawinski parked the car, with the motor running, facing Gordon's building. He then opened the hood and proceeded to adjust the carburetor. While he was so engaged, Gordon got out of the car and began to walk between the car and the building. When he was directly in front of the car, Skawinski raced the engine and the car leapt forward, crushing Gordon between the car and the building.

Subsequently, Gordon brought suit against Skawinski and the latter tendered his defense to the Allstate Insurance Company, which refused to maintain same. It is Allstate's contention that it is not liable for the accident in question because of Exclusion 3, set forth in Section 1, Part 1 of the policy in question. Exclusion 3 provides:

"This Part 1 does not apply to:

3. a nonowned automobile while used (a) in an automobile business by the insured, or (b) in any other business or occupation of the insured. . . ."

138

Definition 3 (c) of words used in Part 1 provides that:
" 'automobile business' means the business of selling, repairing, servicing, storing, or parking of automobiles."

The trial court held that the exclusion cited by Allstate was not applicable to the case at bar and ruled in favor of the defendant. It is from this judgment that the plaintiff appeals.

In support of his proposition that Exclusion 3 of Section 1, Part 1 is applicable to the case at bar, plaintiff has gone to great lengths to establish the alleged fact that Gordon's automobile was being used by Skawinski in the course of his automobile business. In support of this proposition he has cited eight cases dealing with the breadth and the scope of the word "use." Red Ball Motor Freight v. Employers Mut. Liability Ins. Co., 189 F2d 374; Federal Insurance Co. v. Michigan Mut. Liability Co., 277 F2d 442; Oklahoma Farm Bureau Mut. Ins. Co. v. Mouse (Okla), 268 P2d 886; Woodrich Const. Co. v. Indemnity Ins. Co. (ND), 89 NW2d 412; Panhandle Steel Products Co. v. Fidelity Union Cas. Co. (Tex Civ App), 23 SW2d 799; Christian v. Royal Ins. Co., 185 Minn 180, 240 NW 365; Merchants Co. v. Hartford Acc. & Indemnity Co., 187 Miss 301, 188 So 571; Wiebel v. American Farmers Mut. Ins. Co. (Del), 140 A2d 712. In each of these cases an injury was sustained while the vehicle in question was in use, although not actually being operated by the defendant or the defendant's servants. Thus, it was held that injuries resulting from pushing or pulling a vehicle, fueling, loading or unloading a vehicle, rearranging a load already on a vehicle, leaving poles in a precarious position which were used to extricate a vehicle from a ditch, replacing a wheel and directing the movements of a vehicle have all been the result of the use of a vehicle. However, in each of those cases the vehicle at those times was held to have been in the

use of the owner or of some other person who had engaged the use of the vehicle in the course of his employment. We fail to see how this aids the plaintiff's case. If anything, these cases merely demonstrate that while Skawinski was repairing Gordon's automobile, said automobile was being used by Gordon.

█ Exclusion 3, cited above, precludes coverage on behalf of Skawinski while using a nonowned automobile in an automobile business. If the accident had occurred while Skawinski was employing the automobile to obtain parts, or for delivery purposes or as a "courtesy car" for the benefit of his customers, then he would indeed have been using this nonowned automobile in his business. However, this automobile was not being utilized or employed as an incident of his service or as a means, tool or adjunct for or on behalf of his auto repair business. This automobile, while being repaired, was the object of the defendant's business and not an incident or a tool being used therein.

█ It is our opinion that Exclusion 3 of Part 1, Section 1 is not applicable to the case at bar and that the defendant should be indemnified pursuant to the liability protection afforded in Section 1, Part 1, to wit: "Allstate will pay for an insured all damages . . . because of: . . . bodily injury . . . arising out of the . . . maintenance . . . of a nonowned automobile."

When the accident occurred, defendant was clearly engaged in the maintenance of a nonowned automobile and we are not persuaded that while so engaged he was using the automobile in the course of his business so as to exempt him from coverage pursuant to Exclusion 3.

In construing this contract, we are mindful of the long line of Illinois cases to the effect that insurance policies are to be construed strictly against the insurer and liberally in favor of the insured. Freeport Motor Cas. Co. v. Tharp, 338 Ill App 593, 88 NE2d 499; Brook-

son Distillers, Inc. v. United States Cas. Co., 315 Ill App 235, 42 NE2d 870 (Abs); Barr for Use of Senft v. Country Mut. Cas. Co., 345 Ill App 199, 102 NE2d 656.

Even more germane to the issue in the case at bar is the oft cited proposition that "ambiguous or equivocal expressions whereby the insurer seeks to limit its liability will be construed most strongly against the insurer since the insurer is the party which prepares the contract." Mosby v. Mutual Life Ins. Co. of New York, 405 Ill 599, 92 NE2d 103; Pioneer Life Ins. Co. v. Alliance Life Ins. Co., 374 Ill 576; Canadian Radium Corp. v. Indemnity Insurance Co., 411 Ill 325, 104 NE2d 250; Lenkutis v. New York Life Ins. Co., 374 Ill 136, 28 NE2d 86; Wolf v. American Cas. Co., 2 Ill App2d 124, 118 NE2d 777; Craig v. Central Nat. Life Ins. Co., 16 Ill App2d 344, 148 NE2d 31. As stated by Mr. Justice Schwartz of this court in Wolf v. American Cas. Co., 2 Ill App2d 124, 126, 118 NE2d 777: "This is a sound rule. It recognizes the realities of the transaction, that is, that the provisions of an insurance policy are not the product of negotiations between insurer and insured but are written by the insurance company and out of necessity, perhaps, submitted for acceptance without change."

For the above cited reasons, we find that the trial court properly construed the contract in favor of the defendant. The judgment is affirmed.

Affirmed.

FRIEND, J., concurs.

BURKE, J., dissenting:

The defendants ignore that portion of Section 1 which provides that Part 1 does not apply to a non-owned automobile while used in an automobile business by the insured. The policy must be construed as a

whole. All the terms must be considered and read together. This is clearly a limitation to Part 1 of the policy and explicitly excludes coverage for incidents involving a nonowned automobile while used by the insured in an automobile business. These words in the policy qualify and limit the policy obligations of plaintiff under Part 1 of Section 1. Skawinski was using a nonowned automobile in an automobile business and is, therefore, excluded from a liability protection. The defendants rely on cases in which the word maintenance is defined. Only in the case of Morris v. American Liability and Surety Co., 322 Pa 91, 185 Atl 201, was the term maintenance defined as it appears in a policy of automobile liability insurance. None of the other cases cited by defendants involve automobile insurance. The Morris case is not in point. The construction of a clause excluding coverage to a nonowned automobile while used in an automobile business was not an issue in that case.

The automobile business in which Skawinski was engaged was that of repairing automobiles. There is no use to which an automobile can be put that is more fundamental to such a business than that of repairing it. There are numerous cases interpreting the phrase "use" in automobile insurance policies. In Red Ball Motor Freight v. Employers Mut. Liability Ins. Co., 189 F2d 374, the Employers Mutual Liability Insurance Company insured Red Ball Motor Freight for damages "caused by accident and arising out of the ownership, maintenance or use of the automobile." After fueling a truck belonging to Red Ball, the driver did not completely close the valve on the gas pump. Gasoline escaped and an explosion resulted one hour later, at which time the truck was miles from the premises. The insurer refused to defend the claim against the insured for the reason that the accident did not arise out of the "use" of the truck. The court, in holding that the in-

surer was obliged to defend the insured, did not confine itself to the loading and unloading clause but, relied specifically upon the term "use," noting that the situation may not have been strictly a loading operation but was, in fact, a use of the truck. In Federal Insurance Co. v. Michigan Mut. Liability Co., 277 F2d 442, the policy of Michigan Mutual contracted to pay damages arising out of the ownership, maintenance or use of the automobile and contained a loading and unloading clause. It was necessary to remove the rear wheels of a trailer in the course of unloading. After the trailer had been unloaded it was necessary to replace the rear wheels and the truck crane was utilized for this purpose. The boom of the crane came in contact with an overhead tension wire resulting in injury to the driver. It was held that the policy provided primary coverage for this incident under the "use clause," inasmuch as replacing a wheel was a use of the truck. In Merchants Co., et al. v. Hartford Acc. & Ind. Co., 187 Miss 301, 188 So 571, the truck covered by the insurance policy went into a ditch and poles were necessary to extricate it. The poles were left at the side of the road. Later a car struck the poles causing injury to the driver. It was held that the striking of the poles by the motorist arose from the use of the truck. See also Oklahoma Farm Bureau Mut. Ins. Co. v. Mouse (Okla), 268 P2d 886; Woodrich Const. Co. v. Indemnity Ins. Co. of N. A. (ND), 89 NW2d 412; Panhandle Steel Products Co. v. Fidelity Union Cas. Co. (Tex Civ App), 23 SW2d 799; Christian v. Royal Ins. Co., 185 Minn 180, 240 NW 365.

As these cases illustrate, the courts have given a broad meaning to the word "use" in all insurance policies. It is not limited to driving the automobile, but, in effect means anything that might be done to or with the car. Thus, if pushing or pulling the automobile, fueling, loading or unloading, rearranging a load al-

ready on the truck, leaving poles used to extricate a truck from a ditch, replacing a wheel and directing the movements of a vehicle have all been held to constitute the use of an automobile, certainly repairing the engine of an automobile represents the use of an automobile. There is no limiting language employed in the exclusion clause in the instant case. By employing the general term "use" without limiting language the intention clearly was that the clause was to have a broad meaning. There is no ambiguity present. The cases clearly indicate that the term "use" is not to be limited to driving the vehicle. The adjusting of a carburetor and the accelerating of the engine in the course thereof was not only a "use" of a nonowned vehicle but was vitally necessary. It is clear that Skawinski was using a car he did not own in the course of his automobile business. Skawinski was an automobile mechanic engaged in an automobile business. It was necessary for him to repair nonowned automobiles in the course of this business. If he did not repair the automobiles he would not be engaged in the repair business and could not probably use a nonowned vehicle in that business. The use to which a nonowned automobile would most often be put by one in the automotive repair business is that of repairing. A nonowned automobile would seldom be used for going for parts, pulling vehicles or facilitating work done around a garage. An automobile so used in the repair business would be an owned vehicle. There is a type of automobile insurance to cover people in the automobile business. Skawinski did not choose to pay the additional premium for a policy which would insure him while in the automobile business. Maintenance of a motor vehicle is more readily associated with ownership than is use. One supports or keeps up something he owns as an incident of ownership. He maintains ownership and possession. Hence "use" was the proper

144

term to exclude coverage in this situation to a non-owned automobile. I think that the judgment should be reversed and the cause remanded with directions that judgment be entered declaring that the policy of insurance issued by plaintiff to Paul Skawinski contained no coverage for the occurrence of September 8, 1959 in which Roland Gordon was injured.