[Civ. No. 33657. Second Dist., Div. One. Aug. 14, 1969.]

TRAVELERS INDEMNITY COMPANY, Plaintiff and Appellant, v. ROYAL INDEMNITY COMPANY et al., Defendants and Respondents.

Schell & Delamer, Patrick M. Hyde and Charles H. Carpenter for Plaintiff and Appellant.

Dryden, Harrington & Swartz and Vernon G. Foster for Defendants and Respondents.

FOURT, J.—Travelers Indemnity Company (hereinafter sometimes referred to as Travelers) appeals from the judgment entered in this action for declaratory relief to determine the respective legal rights, duties and obligations of appellant and respondent, Royal Indemnity Company, pursuant to certain insurance contracts with respect to an automobile accident which occurred on August 18, 1965.

The trial court determined that Travelers is primarily liable to indemnify and defend the defendants in an action for personal injuries and wrongful death (Civil Action No. SW C 7171) which was instituted as a result of the automobile collision and that Royal Indemnity Company (hereinafter sometimes referred to as Royal) is secondarily liable to

indemnify and defend in said action after the limits of Travelers policy have been exhausted.

Travelers contends that the trial court erred in its interpretation and application to the facts relating to Civil Action No. SW C 7171 of the exclusionary clause (Part I-Liability; Exclusions (g)) of the policy issued to its named insured. Travelers specifically disputes the trial court's findings (1) that the automobile was not being ''used in the automobile business'' within the terms of its policy exclusion at the time of the accident, and (2) that the driver was at the time of the collision operating the automobile as the owner's agent. Appellant's contentions have no merit.

There is no reporter's transcript but the relevant facts are stipulated. Prior to August 18, 1965, Travelers issued to Simon D. Feigin, then a resident and domiciliary of the State of New York, its policy of automobile liability insurance No. MP 3215964 covering the 1963 Pontiac four-door sedan involved in the subject accident. The policy, which covered the period October 25, 1964, to October 25, 1965, was in full force and effect on the date of the accident. On August 18, 1965, Feigin delivered his 1963 Pontiac to Dolman Pontiac with instructions to remove the vibration which occurred in the automobile during its operation. Dolman Pontiac was then insured under Garage Liability Policy No. RMG 051401 issued by Royal and that policy was in full force and effect also on the date of the accident.

Robert Leston Button, an employee of Dolman Pontiac, applied weights to balance the wheels of the Pontiac and a road-test of the car's performance was thereafter indicated. The testimony of Button and Feigin relative to this determination is consistent. The decision, related in Button's language was translated into action as follows:

''I concluded that the cause of the vibration had to be in the steering. By this time, I doubted that there was anything wrong with the car. I thought it might be just the owner's imagination. The only thing left to do was to road test the car to see if it really did vibrate. I wanted to see exactly what I was up against and if there was any type of vibration, just where it was coming from. I told the service writer, Vick, that I was going to road test the car. He said: 'Allright'. I asked Mr. Feigin to come along to show me what the vibration was. He asked me to drive after I started to walk around to the passenger side. He said: 'Why don't you drive it, then you can probably tell more about it than I can.' ''

While Button was driving the car on the roadtest with Feigin a passenger, the 1963 Pontiac was involved in an accident with a 1956 Oldsmobile driven by Babette T. DeBona, who had as a passenger in her vehicle Babette Terese Waxenfelter. Babette T. DeBona later filed Civil Action No. SW C 7171 for personal injuries and for the alleged wrongful death of Babette Terese Waxenfelter naming various defendants including Button, Dolman Pontiac, Feigin, and both Travelers and Royal. Travelers originally undertook Feigin's defense, and Royal undertook the defense of Button and Dolman Pontiac in the subject action. Subsequently, however, Travelers made a demand upon Royal to assume and take over Feigin's defense and Royal made a demand that Travelers assume and take over the defense of Button and Dolman Pontiac. As a consequence of these cross-demands, Travelers instituted the present action for declaratory relief.

Travelers in its complaint alleges that "under the laws of New York which govern the interpretation of its policy of insurance, that the policy exclusion which applies . . . is a valid contractual agreement under the laws of the State of New York and that its policy of insurance does not afford protection to defendants DOLMAN AND ROBERT LESTON BUTTON for the occurrence giving rise to the civil action brought by BABETTE T. DEBONA; . . . ."

The Travelers policy, a true and correct copy of which is attached to the "STIPULATION OF FACTS," in "Part I-Liability" provides that in addition to the named insured and any resident of the same household the coverage is extended to "any other person using such automobile, provided the actual use thereof is with the permission of the named insured; . . ." "Exclusions" applicable to Part I include, however, the following provision: "This policy does not apply under Part I; . . . (g) to an owned automobile while used in the automobile business, but this exclusion does not apply to the named insured, . . ." "Definitions" under Part I include the following: " 'automobile business' means the business or occupation of selling, repairing, servicing, storing or parking automobiles; . . ."[1]

---

[1] The insurer agrees, in more detail, under the pertinent provisions of the policy issued to Simon D. Feigin as follows:

"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of:

"A. bodily injury, sickness or disease, including death resulting therefrom, hereinafter called 'bodily injury,' sustained by any person;

"B. . . . arising out of the ownership, maintenance or use of the owned automobile or any non-owned automobile, . . .

■ The trial judge correctly determined, in accordance with the weight of appellate decisions, that the 1963 Pontiac automobile was, at the time of the accident, not being "used in the automobile business" within the meaning of the exclusionary clause in the Travelers policy. The decisions relied upon by appellant to support its argument that this determination conflicts with controlling New York law fail to support its contention. A review of these decisions reveals that any apparent conflict between the jurisdictions is referable either to distinguishable facts or to exclusionary clauses phrased in language substantially different from that before this court. (See e.g., *Nationwide Mut. Ins. Co.* v. *Exchange Mut. Ins. Co.* (1966) 49 Misc.2d 707 [268 N.Y.S.2d 495]; *John F. Welgan, Inc.* v. *Government Emp. Ins. Co.* (1966) 49 Misc.2d 816 [268 N.Y.S.2d 700]; *Piliero* v. *Allstate Ins. Co.* (1960) 12 App.Div.2d 130 [209 N.Y.S.2d 90]; *Provident Ins.*

"  .        .      .     .    .    .     .      .      .     .
"*Persons Insured*
"The following are insureds under Part I:
"(a) With respect to the owned automobile,
"(1) the named insured and any resident of the same household,
"(2) any other person using such automobile, provided the actual use thereof is with the permission of the named insured;
"  .        .      .     .    .    .     .      .      .     .
"(c) Any other person or organization legally responsible for the use of
"(1) an owned automobile, or
"(2) a non-owned automobile, . . . provided the actual use thereof is by a person who is an insured under (a) or (b) above with respect to such owned automobile or non-owned automobile.
"  .        .      .     .    .    .     .      .      .     .
"*Definitions*
"Under Part I:
"'*named insured*' means the individual named in Item 1 of the declarations and also includes his spouse, if a resident of the same household;
"'insured' means a person or organization described under 'Persons Insured';
"  .        .      .     .    .    .     .      .      .     .
"'*owned automobile*' means a private passenger, farm or utility automobile or trailer owned by the named insured, and includes a temporary substitute automobile;
"  .        .      .     .    .    .     .      .      .     .
"'*automobile business*' means the business or occupation of selling, repairing, servicing, storing or parking automobiles;
"  .        .      .     .    .    .     .      .      .     .
"*Exclusions*
"This policy does not apply under Part I:
"  .        .      .     .    .    .     .      .      .     .
"(g) to an owned automobile while *used in the automobile business*, but this exclusion does not apply to the named insured, a resident of the same household as the named insured, a partnership in which the named insured or such resident is a partner, or any partner, agent or employee of the named insured, such resident or partnership; . . ." (Italics added.)

*Co. of New York* v. *Allstate Ins. Co.*, 33 Misc.2d 530 [227 N.Y.S.2d 226].)

The Supreme Court of Minnesota, in a persuasive decision which contains a comprehensive review of the relevant authorities, recently concluded with respect to an identical exclusionary clause that an automobile brought to a garage for parking or repair is not being used in the parking or automobile business. "The terms used in an insurance policy must be given their plain, ordinary, and popular meanings so as to effectuate the intention of the parties. [Citation.] Applying these rules to the language we have before us, we think the owner of this automobile would be quite astonished to learn that his car, while in the hands of the garage owner for repairs, was being used in the automobile business." (*Hammer* v. *Malkerson Motors, Inc.* (1964) 269 Minn. 563 [132 N.W.2d 174, 179].) Numerous authorities lend logical support to this conclusion. (*Western Alliance Ins. Co.* v. *Cox* (Tex.Civ.App., 1965) 394 S.W.2d 238; *McCree* v. *Jenning* (1960) 55 Wash.2d 725 [349 P.2d 1071]; *Cherot* v. *United States Fid. & Guar. Co.* (10th Cir. 1959) 264 F.2d 767 [71 A.L.R.2d 959]; *American Fire & Cas. Co.* v. *Surety Indem. Co.* (1965) 246 S.C. 220 [143 S.E.2d 371]; *Commercial Standard Ins. Co.* v. *Sanders* (Tex.Civ.App., 1959) 326 S.W.2d 298; *St. Paul Fire & Marine Ins. Co.* v. *Thompson* (1966) 280 Ala. 67 [189 So.2d 866]; *Hammer* v. *Malkerson Motors, Inc., supra; Le Felt* v. *Nasarow* (1962) 71 N.J.Super. 538 [177 A.2d 315]; *Case* v. *Fidelity & Cas. Co. of New York* (1964) 105 N.H. 422 [201 A.2d 897]; *Dumas* v. *Hartford Acc. & Indem. Co.* (La.App., 1965) 181 So.2d 841; *Allstate Ins. Co.* v. *Skawinski*, 40 Ill.App.2d 136 [189 N.E.2d 365]; *Chavers* v. *St. Paul Fire & Marine Ins. Co.* (N.D. Ohio, 1960) 188 F.Supp. 39; *Pirkle* v. *American Liberty Ins. Co.* (N.D.Ga., 1965) 247 F.Supp. 1018; *Wilks* v. *Allstate Ins. Co.* (La.App., 1965) 177 So.2d 790.)

■ ". . . If the insurer would create an exception to the general import of the principal coverage clauses, the burden rests upon it to phrase that exception in clear and unmistakable language. [Citation.] If this is not done any ambiguity or uncertainty is resolved in favor of the policyholder. ■ The courts will not sanction a construction of the insurer's language that will defeat the very purpose or object of the insurance. [Citations.] Indeed an exception must be couched in terms which are 'clear to the ordinary mind' [citation]. . . ." (*Osborne* v. *Security Ins. Co.*, 155 Cal.App. 2d 201, 207 [318 P.2d 94].)

■ According to the language of the clause presently under consideration, it is the business in which the car was being used rather than the business or occupation of the person using the car that constitutes the controlling factor. ". . . ■ [O]rdinarily an automobile being driven from the place of business of the owner by a garage keeper to his garage for the purpose of making repairs requested by the owner is not being 'used in the automobile business' within the meaning of the present exclusion clause.

"The . . . cases point out that an exclusionary clause of the type here involved refers to the use being made of the automobile and not to the occupation of the driver. The mere fact that the automobile is being driven at the time by one engaged in the automobile business is not conclusive. The use to which the vehicle is being put is the determining factor.

■ "We are, therefore, primarily concerned with the application of the clause 'used in the automobile business.' The policy provides that 'automobile business means the business or occupation of selling, repairing, servicing, storing or parking automobiles.' To constitute such use, the vehicle must be employed for some purpose in connection with that business as defined. Whether an automobile is so used is an issue of fact, which must be determined with regard to the nature of the particular business and the circumstances surrounding the use at the time." (*American Fire & Cas. Co.* v. *Surety Indem. Co., supra,* 143 S.E.2d 371, 373.)

Specifically, it has been determined that ". . . a customer's automobile in the custody or possession of an automobile repairman who drives it for the purpose of testing the repairs which he has made is not being used in the automobile business within the meaning of the exclusion clauses in . . . [Travelers policy]." (*Le Felt* v. *Nasarow, supra,* 177 A.2d 315, 325.) Thus, both the legal authorities and the factual circumstances support the trial court's determination that Button's use of the car with Feigin's permission to road-test repairs and determine the need for additional service did not exclude the insured, the driver, or the driver's employer from coverage under the Travelers policy.

■ Appellant next contends that the additional ground upon which the trial court's decision relating to the inapplicability of the exclusionary clause rests, namely its finding that Button was Feigin's agent at the time of the accident, is erroneous and is inconsistent with the finding that the car was not being used in the automobile business. It is conceded that

the automobile was being driven by Button with Feigin's permission; the further finding that Button was operating the car as Feigin's agent is supported by the facts and is not inconsistent with the determination that the car was not being used in the automobile business. (Cf., *Nationwide Mut. Ins. Co.* v. *Exchange Mut. Ins. Co., supra,* 268 N.Y.S.2d 495, 499-500.)

The question of agency is a factual determination and, depending upon circumstances, the driver of a vehicle may be the agent of the owner who is present in the vehicle. (*Flores* v. *Brown,* 39 Cal.2d 622 [248 P.2d 922]; *Souza* v. *Corti,* 22 Cal.2d 454 [139 P.2d 645, 147 A.L.R. 861]; *Glanville* v. *Cannick,* 182 Cal.App.2d 514 [6 Cal.Rptr. 175].) The employee of one party may become the agent of another with respect to a given transaction and the existence of an agency may be implied from the conduct of the parties. *Thayer* v. *Pacific Elec. Ry. Co.,* 55 Cal.2d 430, 438 [11 Cal. Rptr. 560, 360 P.2d 56].)

The trial court in the present case found that "At the time of the accident, SIMON D. FEIGIN was an occupant of the automobile, with the power to control it and the position to govern the manner of its operation and to operate the automobile himself." As a result, the trial court found the existence of an agency between Feigin and Button.

"When it is claimed that the driver of an automobile is acting as the agent of his passenger, the crucial question to be determined is whether the latter has the right to control the former in the operation of the vehicle. [Citation.] If the car belongs to the driver, the mere fact that the trip may have been undertaken for the passenger's benefit is insufficient to establish that the passenger had the right of control. [Citation.] Nor does the passenger have any right of control over his own car when the trip is undertaken for the driver's purposes and the passenger's presence is merely incidental. [Citation.] However, when the passenger provides the car and the driver is operating it for the passenger's own benefit, it has been held that the relationship of principal and agent exists as a matter of law. [Citations.]" (*Glanville* v. *Cannick, supra,* 182 Cal.App.2d 514, 517.) Clearly, under the circumstances of this case, it was a permissible inference that Button in operating the 1963 Pontiac acted as Feigin's agent to roadtest the car.

The weight of persuasive authority supports the trial court's interpretation of the exclusionary clause in the

Travelers contract and the evidence supports its findings that the 1963 Pontiac was, at the time of the accident, being driven by Button as the agent of Feigin, the named insured, and was not being used in the automobile business within the meaning of the Travelers policy. As a consequence, Travelers is primarily responsible to defend Civil Action No. SW C 7171.

The judgment is affirmed.

Wood, P. J., and Lillie, J., concurred.