**Telitha O. BRADLEY, Plaintiff,**

v.

**CAPITAL ENGINEERING & MFG. CO., an Illinois corporation, Defendant.**

**No. 87 C 1155.**

United States District Court, N.D. Illinois, E.D.

Jan. 25, 1988.

---

Harvey Melinger, Chicago, Ill., for plaintiff.

Marie G. Stines, Ronald L. Barnard, Barnard & Associates, Chicago, Ill., John W. Hood, Capital Engineering & Mfg. Co., Harvey, Ill., for defendant.

## MEMORANDUM AND ORDER

MORAN, District Judge.

This suit, brought under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001–1461, is before the court on two motions. Plaintiff seeks summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure on count I, alleging that as a matter of law she is entitled to recover insurance benefits that defendant, her previous employer, has denied her in violation of ERISA § 502, 29

U.S.C. § 1132. In this count plaintiff seeks compensatory and punitive damages and attorney's fees. Defendant moves for dismissal of count II,[1] which alleges that plaintiff was terminated in violation of ERISA § 510, 29 U.S.C. § 1140, to prevent her from obtaining vested pension rights. For the following reasons we deny defendant's motion to dismiss and grant plaintiff summary judgment on count I, but deny her claim for punitive damages.

### FACTS

Plaintiff began working full-time as a secretary and personnel assistant at defendant's plant in Harvey, Illinois, on October 14, 1985. On July 18, 1986, she saw a Dr. Shafiq Ahmed in his office and complained of severe abdominal pain and other ailments (Pl.Exh. 5). Plaintiff was admitted to Palos Community Hospital that same day and was diagnosed as suffering from diverticulitis, among other illnesses (Pl. Exh. 4 at 1). Plaintiff was discharged from the hospital on July 24, 1986, with instructions to return for an evaluation in three months (Pl.Exh. 4).

Defendant's insurance plan operates as follows: full-time employees are entitled to insurance benefits after three months of continuous employment. These employees are excluded from coverage if it is determined that any illness or injury they suffer existed before they became eligible for benefits. After twelve months of employment all illnesses, including preexisting ones, are covered under defendant's plan.

Plaintiff claims that defendant owes her $4,638.95 for medical expenses she incurred as a result of her July 18 hospitalization (Pl.Sum.Jdgmt.Mo. at 1). Defendant asserts that plaintiff is not so entitled because the condition that led to her hospitalization existed before plaintiff became eligible for benefits.

Plaintiff returned to work on July 29, 1986, and was discharged on January 2, 1987. The parties agree that on January 14, 1987, plaintiff would have completed twelve months of continuous service and thus would have received insurance coverage for preexisting illnesses (Cplt. at 3, ¶ 7). Plaintiff alleges that "since [she] did not have surgery for [the condition that led to her hospitalization] there is a chance that she will need surgery in the future to correct the condition, should it reoccur", and that "plaintiff believes she was terminated to prevent her from becoming entitled to [her twelve-month] benefits" (Cplt. at 3, ¶¶ 8, 9). Defendant responds that plaintiff was one of many employees fired as part of an overall reduction of its work force (Ans. at 5, ¶ 9; Mo. to Dis. at 2–3, ¶ 6).

### DISCUSSION

**I. *Denial of Benefits (Count I)***

**A. Summary Judgment**

On a motion for summary judgment the court views all the evidence and the reasonable inferences to be drawn therefrom in the light most favorable to the non-moving party. *United States v. Diebold*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Yorger v. Pittsburgh Corning Corp.*, 733 F.2d 1215, 1218–19 (7th Cir. 1984). At this stage our function is not to weigh the evidence but to decide whether there exist genuine material issues for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). "One of the principle purposes

---

1. Earlier in these proceedings defendant asserted that dismissal of count I was also proper because plaintiff had failed to exhaust administrative insurance claim procedure (Mo. to Dis. at 1–2). Defendant does not outline any specific procedure that plaintiff failed to follow but merely suggests that an insurance administrator had not reviewed a letter submitted by plaintiff's doctor at the time that plaintiff filed this suit (Mo. to Dis. at 2). Since the time that defendant submitted its motion to dismiss, the parties have fully briefed and submitted exhibits concerning the substantive issues in count I, and defendant has asserted that count I presents disputed issues of material fact (Ans. at 4–5). Whether plaintiff has exhausted the administrative remedies available to her is a matter left to the discretion of the court. *Kross v. Western Electric Co., Inc.*, 701 F.2d 1238, 1244 (7th Cir. 1983). Since defendant's position on count I has changed, we choose not to apply the exhaustion doctrine and instead we address the issues contested by the parties in count I.

of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses ...", *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986), and in the absence of evidence that is "significantly probative," or more than "merely colorable," summary judgment may be granted. *Anderson,* 106 S.Ct. at 2511.

### B. Preexisting Condition

■ Defendant asserts that the illness leading to plaintiff's hospitalization existed before she became eligible for benefits and therefore plaintiff is excluded from coverage. Defendant has not, however, proffered even colorable evidence to support its position.

Plaintiff has submitted the medical records relevant to her hospitalization (Exhs. 1–4). Plaintiff has also produced the sworn affidavit of her doctor, Dr. Ahmed (Mo. for Sum.Jdgt. at 3–5), and a letter sent by Dr. Ahmed to plaintiff's attorney (Exh. 5). Plaintiff has also included her own sworn statement (Pl.Rep.Exh. 2). This evidence indicates that while plaintiff may have suffered from various long-term symptoms, the illness that alerted her to her health problems, brought her to Dr. Ahmed's office, and led to her hospitalization occurred after she became eligible for benefits.

Defendant submits an affidavit and a letter dated June 16, 1987, that Dr. William Appelbaum wrote to defendant (Ans. at 6–7). Dr. Appelbaum's affidavit includes one conclusory assertion that "[plaintiff's] condition was preexisting" (¶ 3), and, for the basis for this conclusion, Dr. Appelbaum refers to his findings detailed in the attached "Exhibit A" (¶ 4). Close examination of Exhibit A reveals no evidence contradicting that proffered by plaintiff. In Exhibit A Dr. Appelbaum simply states

that many people suffer from diverticulosis, which "may be an asymptomatic condition" but is necessarily suffered by those who later develop complications such as diverticulitis (the condition that led to plaintiff's hospitalization) (Exh. A at 1). Dr. Appelbaum notes that people suffering from diverticulosis may feel only "mild abdominal pain."

Defendant suggests that if a doctor could have detected plaintiff's diverticulosis earlier, such as during an operation undergone by plaintiff in 1976, *see* Appelbaum affidavit, then her diverticulitis was a preexisting condition excluded from coverage. Defendant has failed to cite relevant authority [2] supporting its position that a preexisting condition is one that develops from a disease that may have existed and may have been discoverable by a doctor but was neither noticed by its victim nor treated. In fact, the law in Illinois mandates that when considering causes barring coverage for illness originating before a specified time

> [t]he origin of said sickness is deemed to be the date it first becomes manifest or active or when there is a distinct symptom or condition from which one learned in medicine can with reasonable accuracy diagnose the disease.

*Craig v. Central National Life Ins. Co.,* 16 Ill.App.2d 344, 354, 355, 148 N.E.2d 31, 36 (3d Dist.1958).

Defendant relies on *Broccolo v. Horace Mann Mutual Casualty Co.,* 37 Ill.App.2d 493, 498–99, 186 N.E.2d 89, 91–92 (1st Dist. 1962), in which the court quoted the *Craig* rule and held that the plaintiff, who knew of her medical illness and had been treated for it before she received coverage, was properly denied benefits under an exclusionary clause barring coverage for preexisting conditions. In contrast to the plaintiff in *Broccolo,* there is no indication [3] that

---

2. In fact, neither party has cited controlling law to support its legal assertions. Instead, the parties rely on Louisiana state appellate court decisions from the 1950s and Kentucky appeals court decisions. Neither party specifies which law they believe governs, and neither cites law from any one state consistently. The court applies Illinois law since the contract apparently

was performed, agreed to and executed in Illinois. *See Home Insurance Co. v. Service America Corp.,* 654 F.Supp. 157, 159 (N.D.Ill.1987).

3. Defendant suggests that further discovery would enable it to determine whether plaintiff had earlier been treated for diverticulitis. The record reveals that discovery requests have been

plaintiff here was either aware of or treated for diverticulitis. The parties agree that diverticulitis is an acute and painful disease, while diverticulosis causes mild discomfort. The court thus finds that the evidence, including Dr. Appelbaum's affidavit, supports plaintiff's assertion that she was not aware of any particular pain until she sought medical attention in July, 1986. Plaintiff worked full-time for defendant for approximately nine months before she entered the hospital and thus appears to have been fairly healthy (and not suffering from the acute pain that diverticulitis causes) during this time. Further, we find no reason to doubt the medical history given by plaintiff to Dr. Ahmed when she went to him in July complaining of severe pain.

Defendant has offered no evidence that plaintiff knew about or was treated for either diverticulosis or diverticulitis before she was hospitalized in July, 1986. Since the record reveals only defendant's speculation that prior to plaintiff's employment she may have been diagnosed as having diverticulosis which may, but does not necessarily, lead to the condition for which she was hospitalized, we find as a matter of law that plaintiff's diverticulitis did not preexist her eligibility for benefits. Plaintiff is entitled to compensation for her hospital expenses.

## C. Relief

### 1. *Punitive Damages*

■ In addition to compensatory relief, plaintiff seeks punitive damages and attorney's fees. In *Massachusetts Mutual Life Ins. Co. v. Russell,* the Court held that there was no private right of action to recover extra-contractual or punitive damages under ERISA § 409(a), 29 U.S.C. § 1109(a). 473 U.S. 134, 145–48 (1985)

(ERISA's explicitly stated remedies intended to be exclusive).

The Seventh Circuit Court of Appeals, and other courts in this district, have relied on *Russell* to consistently deny punitive or extra-contractual damages under ERISA. *See, e.g., Kleinhans v. Lisle Savings Profit Sharing Trust,* 810 F.2d 618, 627 (7th Cir.1987) (barring damages under § 502(a)(3)); *Unitis v. JFC Acquisition Co.,* 643 F.Supp. 454, 462 (N.D.Ill.1986) (Getzendanner, J.) (same); *Vaughn v. The Wessel Co.,* 7 E.B.C. 2688, 2689 & n. 5 (N.D.Ill.1986) [Available on WESTLAW, 1986 WL 13216] (Leinenweber, J.) (collecting cases prohibiting damages); *Kimmel v. Texas Commerce Bank,* No. 86–2861, slip op. at 2, n. 2 (N.D.Ill. Aug. 14, 1986) [Available on WESTLAW, 1986 WL 9180] (Nordberg, J.) (striking claim for punitive damages under ERISA); *Wilson v. Pye,* No. 85–6341, slip op. at 10 (N.D.Ill. Jan. 6, 1986) [Available on WESTLAW, 1986 WL 1027] (Grady, J.) ("after *Russell,* punitive damages are probably never recoverable by an ERISA participant or beneficiary"). *See also Forys v. United Food & Commercial Worker's International Union,* 829 F.2d 603, 604–05 n. 2 (7th Cir.1987) ("appellants most likely would be unable to recover punitive damages or extra-contractual damages for emotional distress under ERISA"). Plaintiff has offered no reason or applicable legal precedent that would counsel the court to award her punitive damages. In light of the clear trend to the contrary, and in the absence of any argument or case law that would support a decision to award punitive damages, we decline to do so here.

### 2. *Attorney's Fees*

■ We note at the outset that plaintiff has failed to provide the court with any

---

made but nowhere among them is defendant's request for plaintiff's earlier medical records. There is no indication in the record that plaintiff has even seen a doctor since her operation in 1976 and plaintiff's affidavit supports the assertion that, other than the 1976 episode, she was in good health until her July hospitalization and had not previously suffered abdominal pain (Aff. ¶¶ 1, 3). Further, in its motion to dismiss defendant admits that "all available medical records relevant to plaintiff's insurance claims

were secured and reviewed" before defendant decided plaintiff was not entitled to benefits (Mo. to Dis. ¶ 1). The court sees no reason why discovery is now necessary to evaluate plaintiff's claim, but was not necessary either when plaintiff's benefits were denied or on March 1, 1987, when defendant filed its motion to dismiss. Without any indication in the record as to why this would be the case, we interpret defendant's passing mention of discovery as of little relevance to the current motion.

legal support for her position that attorney's fees should be awarded here, and defendant has not addressed the issue either. Thus, we consider whether awarding attorney's fees is appropriate without the guidance of the parties. "In any action under this subchapter [of ERISA] by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fees and costs of action to either party." 29 U.S.C. § 1132(g)(1). To determine whether an award of attorney's fees is appropriate, the Seventh Circuit has instructed lower courts to consider the following factors:

> (1) the degree of the offending party's culpability or bad faith;

> (2) the degree of the ability of the offending party to satisfy personally an award of attorney's fees;

> (3) whether or not an award of attorney's fees against the offending party would deter other persons acting under similar circumstances;

> (4) the amount of benefits conferred on members of the pension plan as a whole; and

> (5) the relative merits of the parties' positions.

*Bittner v. Sadoff & Rudoy Industries,* 728 F.2d 820, 828–29 (7th Cir.1984) (quoting *Janowski v. International Brotherhood of Teamsters,* 673 F.2d 931, 940 (7th Cir.1982), *vacated on other grounds,* 463 U.S. 1222, 103 S.Ct. 3565, 77 L.Ed.2d 1406 (1983)).

There is no evidence here of bad faith and we proceed to the next factor: the parties' ability to pay. While defendant claims that economic cutbacks led to its dismissal of more than 20 per cent of its work force, there is no indication that defendant would be unable to pay reasonable attorney's fees here, and there is no indication that the attorney's fee award would be paid out of the pockets of anyone but defendant, the party responsible for the denial of benefits to plaintiff. *Cf. Bittner,* 728 F.2d at 829 (factor 2 weighs against award if plan assets are source of funds and pay-

ment would hurt plan beneficiaries). Factors 3 and 4 have been described as particularly relevant to a determination of whether to award fees to an ERISA plaintiff. *Marquardt v. North American Car Corp.,* 652 F.2d 715, 719 (7th Cir.1981). *See also Bittner,* 728 F.2d at 829 (all five factors oriented toward case where plaintiff prevails and seeks fees). Factor 4 is of limited applicability here, however, since plaintiff neither raises a significant legal question regarding ERISA nor seeks to benefit other plan participants. *See Marquardt,* 652 F.2d at 719.[4]

In the present case, factors 3 and 5 are closely related. Plaintiff prevails on count I and defendant's position, in arguing for denial of her compensatory benefits, is not substantially justified either by legal precedent or by the facts presented here. *See Free v. Briody,* 793 F.2d 807, 809 (7th Cir.1986) (prevailing party should be awarded fees when loser's position in case not substantially justified). The court recognizes the importance of deterring defendant and other employers from failing to review carefully the insurance claims of their employees before denying benefits and from improperly withholding medical benefits to which their employees are entitled. We find that an award of reasonable attorney's fees will further ERISA's purposes and we award such fees for time devoted to count I.

## II. *Unjust Termination*

Assuming the truth of all well-pleaded facts, we will dismiss count II only if plaintiff is not entitled to relief under any set of facts proven consistent with the complaint. *See Hishon v. King & Spaulding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–33, 81 L.Ed.2d 59 (1984).

■ Employers are prohibited by 29 U.S.C. § 1140 from discharging plan participants "for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan." To recover under this provision

---

**4.** There is no indication in the record that other employees present or past have been denied

benefits by defendant.

plaintiff must show that the reasons given for the termination were pretextual and that the true purpose of the discharge was to deprive her of impending insurance benefits. *Ursic v. Bethlehem Mines,* 556 F.Supp. 571, 575 (W.D.Pa.1983), *aff'd in relevant part,* 719 F.2d 670, 671 (3d Cir. 1983).

 Plaintiff was "laid off" twelve days before she would have completed twelve months of continuous service (Ans. at 3, ¶¶ 6, 7), which, under defendant's plan, would have entitled her to coverage for treatment of preexisting conditions (Ans. at 3, ¶ 7). She "believes she was [fired] to prevent her from becoming entitled" to these medical benefits (Cplt. ¶ 9). While defendant's asserted acts, and not plaintiff's beliefs, are relevant here, the court interprets this statement as plaintiff's attempt to allege that any reason given by defendant for her termination is pretextual since defendant really acted to prevent her from attaining certain medical benefits. Plaintiff further alleges that "there is a chance that she will need surgery in the future to correct the condition, should it reoccur" (Cplt. ¶ 8) and suggests that defendant knew of this impending expense and dismissed her to avert future economic loss. Defendant claims plaintiff was among the more than 20 per cent of its employees discharged as part of an overall force reduction (Def.Mo. to Dis. at 2–3, ¶ 6), and plaintiff has not responded to this assertion.

The allegations here are sufficient to survive a motion to dismiss, although plaintiff, at a later stage in this litigation, may incur difficulty substantiating her hypothetical sequence of events demonstrating that defendant's decision to discharge her was motivated by consideration of her benefits rather than a general economic cutback scheme.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment as to count I is granted. Plaintiff is hereby awarded compensatory damages in the amount of $4,638.95 and attorney's fees for time de-

voted to count I. Defendant's motion to dismiss count II is denied.