David DUTCHAK, et al.,
Plaintiffs–Appellees,

v.

CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND, Defendant–Appellant, Cross–Appellee,

Lawrence Walner & Associates, Ltd., et al., Edmund W. Kitch, Cross–Appellants.

Elizabeth M. DOLE, Secretary of Labor, Plaintiff–Appellee,

v.

CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND, Defendant–Appellant.

Chester J. SULLIVAN, et al., Plaintiffs–Appellees,

v.

CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND, Defendant–Appellant, Cross–Appellee,

Lawrence Walner & Associates, Ltd., et al., Edmund W. Kitch, Coin, Crowley & Nord, Cross–Appellants.

Nos. 89–3351, 89–3352, 89–3353, 89–3461, 89–3462, 89–3644, 89–3645, 89–3656, 89–3785 and 89–3786.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 29, 1990.

Decided April 19, 1991.

As Amended April 24, 1991.

Peter J. Barack, Barack, Ferrazzano, Kirschbaum & Perlman, Lawrence Walner, Walner & Associates, Chicago, Ill., George E. Faber, Faber & Buehler, West Dundee, Ill., Harry B. Bainbridge, Flossmoor, Ill., for plaintiffs-appellees in Nos. 89–3351, 89–3352, 89–3353, 89–3785 and 89–3786 and plaintiffs in Nos. 89–3461, 89–3644 and 89–3645.

Peter J. Barack, Barack, Ferrazzano, Kirschbaum & Perlman, Lawrence Walner, Walner & Associates, Chicago, Ill., Harry B. Bainbridge, Flossmoor, Ill., for plaintiffs in No. 89–3462.

Peter J. Barack, Barack, Ferrazzano, Kirschman & Perlman, Lawrence Walner, Walner & Associates, Anita M. D'Arcy, Julia A. Bruckner, Alice Carroll–Tracy, Coghlan, Joyce, Kukankos, Urbut & D'Arcy, Chicago, Ill., George E. Faber, Faber & Buehler, West Dundee, Ill., Harry B. Bainbridge, Flossmoor, Ill., for plaintiffs in No. 89–3656.

William J. Nellis, Central States, Southeast and Southwest Areas Pension Fund, Rosemont, Ill., James L. Coghlan, Anita M. D'Arcy, Julia A. Bruckner, Coghlan, Joyce, Kukankos, Urbut & D'Arcy, Chicago, Ill., for defendant-appellant in Nos. 89–3351, 89–3352, 89–3353, and defendant-appellee in Nos. 89–3461, 89–3462, 89–3644, 89–3656.

Lionel G. Gross, Jeffrey P. DeJong, Brian C. Witter, Altheimer & Gray, Ellis Sostrin, Chicago, Ill., for appellants in Nos. 89–3461, 89–3462.

Lionel G. Gross, Jeffrey P. DeJong, Brian C. Witter, Altheimer & Gray, Ellis Sostrin, Lawrence Walner, Walner & Associates, Chicago, Ill., for appellant Lawrence Walner & Associates in No. 89–3462.

Phil C. Neal, Neal, Gerber & Eisenberg, Chicago, Ill., for appellant Edmund W. Kitch in Nos. 89–3644, 89–3645.

Wilbert F. Crowley, Jr., Cowen, Crowley & Nord, Chicago, Ill., for appellant Coin, Crowley & Nord in No. 89–3656.

William J. Nellis, Central States, Southeast and Southwest Areas Pension Fund, Rosemont, Ill., James L. Coghlan, Julia A. Bruckner, Coghlan, Joyce, Kukankos, Urbut & D'Arcy, Chicago, Ill., for defendant-appellee in No. 89–3645.

William J. Nellis, Central States, Southeast and Southwest Areas Pension Fund, Rosemont, Ill., James L. Coghlan, Anita M. D'Arcy, Julia A. Bruckner, Alice Carroll–Tracy, Coghlan, Joyce, Kukankos, Urbut & D'Arcy, Chicago, Ill., for defendant-appellant in Nos. 89–3785, 89–3786.

Before CUDAHY, RIPPLE and MANION, Circuit Judges.

CUDAHY, Circuit Judge.

The Central States, Southeast and Southwest Areas Pension Fund (Fund) has been involved in a nearly eighteen-year battle over its benefits policies and management. In what may be the final leg of this litigation, the Fund now appeals the district court's award of just over five million dollars in attorney's fees and expenses under the terms of a settlement approved by the district court on November 10, 1987. The settlement outlines the factors that the

judge is to use in determining the fee amount. The only issues the Fund raises are whether the district court erred in approving a fee multiplier of two for a substantial portion of the fee award (for a total enhancement of $2,962,830.95) and whether the district court's calculation of the lodestar figure was based on erroneous findings of allowable hours. The plaintiffs cross-appeal on the same issues, arguing that the multiplier should have been even greater and that the judge improperly reduced the lodestar figure for imprecise billing practices.

## I.

The history of these consolidated cases is long and complex, and we recite only those facts relevant for this appeal; an earlier opinion recounts most of the case's history. *Secretary of Labor v. Fitzsimmons*, 805 F.2d 682 (7th Cir.1986) (reversing initial settlement agreement). Attorneys Walner and Sidlinger represented a class of pension contributors challenging administration of the Fund. The class alleged unfair eligibility, break-in-service and vesting rules; unreasonable burdens of proof; and

noncompliance by trustees with established rules. Eventually, the Secretary of Labor entered the suit, concerned about mismanagement of the Fund's assets.

On November 10, 1987, the district court approved a second settlement agreement which reformed certain pension administration practices and which governs the award of attorney's fees. In an unusual provision that operates like the "choice of law" provision in many contracts, the settlement authorizes the judge to determine the fee award in accordance with the "factors" identified and discussed in certain federal court cases. In the settlement's terms, the award of fees

shall be made and shall be determined in accordance with the factors delineated in the cases of *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161 (3rd Cir.1973); *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir.1974); *In re Folding Carton Antitrust Litigation*, 84 F.R.D. 245 (N.D.Ill.1979); and/or *Cenco Securities Litigation*, 519 F.Supp. 322 (N.D.Ill. 1981), and other relevant federal court decisions based thereon.[1]

---

1. Article VI of the settlement provides in full:

   A. The attorneys for the plaintiffs in *Dutchak* and *Sullivan* shall make application to the Court for payment of attorneys' fees and reimbursement of disbursements incurred in connection with this litigation, which includes *Dutchak; Sullivan; Goss* (No. 75 C 2507); *Donovan; Sells;* and *Aetna,* and the attaining of benefits for the Fund and the aforesaid classes as provided for herein, to wit: recovery of insurance funds relating to investment, pensions, disability payments, rule modifications, the consent decree, and other benefits. Recovery of disbursements shall include, without limitation, the expenses of actuarial and statistical experts. Such application shall be made and shall be determined in accordance with the factors delineated in the cases of *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161 (3rd Cir.1973); *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir.1974); *In re Folding Carton Antitrust Litigation*, 84 F.R.D. 245 (N.D.Ill.1979); and/or *Cenco Securities Litigation*, 519 F.Supp. 322 (N.D.Ill.1981), and other relevant federal court decisions thereon. The parties recognize that time expended by the plaintiffs' attorneys in *Daniel*, No. 74 C 2865, may bear reasonable relationship to matters relevant to the issues in *Dutchak* and

   *Sullivan* and the obtaining of benefits hereunder and that the applications for determination of attorneys' fees may be based in part upon a reasonable allocation of the attorneys' time in that case.

   B. Upon the entry of a final judgment approving the settlement contemplated hereunder, the Fund shall pay to plaintiffs' attorneys such amounts as the Court shall determine to be payable hereunder, with interest at the statutory rate for post-judgment interest in the State of Illinois from the date of award of such fees and disbursements to the date of payment. Nothing contained herein shall be construed to prevent the Fund from objecting to the amount of attorneys' fees and disbursements sought by plaintiffs' attorneys, but such objection, if any, shall be on the sole ground that the amounts sought are improperly claimed or otherwise inappropriate under the factors delineated in *Lindy, Grinnell, Folding Carton* and/or *Cenco* and shall not be based on any other grounds. The Fund's payment hereunder shall be in lieu of any other fee for which the Fund, its beneficiaries or any defendant might otherwise have been liable, and there shall be no liability hereunder in the event the settlement does not become final. Settlement Agreement at 20–22 (reproduced in Appellants' App. at SA–20 to SA–22).

(We refer to this set of cases collectively as the "controlling cases.") The district court received fee applications and allocated awards in the following amounts:

| Attorney | Lodestar | Multiplier | Total |
|---|---|---|---|
| Lawrence Walner and Associates, Ltd. | | | |
| Lawrence Walner | $1,681,662.50 | $1,681,662.50 | $3,363,325.00 |
| Lawrence Walner (*Daniel*[2] action) | 161,500.00 | | 161,500.00 |
| William Sidlinger | 383,514.75 | 383,514.75 | 767,029.50 |
| William Sidlinger (*Daniel* action) | 3,615.00 | | 3,615.00 |
| Harold Novak | 20,250.00 | 20,250.00 | 40,500.00 |
| Robert Freud | 2,970.00 | 2,970.00 | 5,940.00 |
| Sheldon Klein | 1,168.20 | 1,168.20 | 2,336.40 |
| | | | $4,344,245.90 |
| | | | |
| Other Participating Attorneys | | | |
| Peter Barack | 400,972.00 | 400,972.00 | 801,944.00 |
| Edmund Kitch | 275,068.00 | 275,068.00 | 550,136.00 |
| Coin, Crowley & Nord | 161,873.50 | 161,873.50 | 323,747.00 |
| Robert Skirnick | 17,370.00 | 17,370.00 | 34,740.00 |
| Tenney & Bentley | 10,182.00 | 10,182.00 | 20,364.00 |
| S. John Templeton | 7,800.00 | 7,800.00 | 15,600.00 |
| | $3,127,745.95 | $2,962,830.95 | $6,090,776.90 |

The Fund presents two challenges to the award. First, it claims that principles announced in the controlling cases prohibit the fee multiplier of two for the *Dutchak/Sullivan* litigation (no multiplier was awarded for *Daniel* time). Second, the Fund asserts that the judge abused his discretion by reducing the lodestar by only ten percent in light of several related objections to Sidlinger's and Walner's time records.

Plaintiffs cross-appeal, arguing that the multiplier should have been greater than two and that the judge's ten percent reduction of the permitted hours is impermissible as a matter of law.

**2.** The settlement provides for inclusion of some time from *Daniel v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen, and Helpers of America*, 410 F.Supp. 541 (N.D.Ill. 1976), aff'd, 561 F.2d 1223 (7th Cir.1977), rev'd, 439 U.S. 551, 99 S.Ct. 790, 58 L.Ed.2d 808 (1979). The district court's Memorandum and Order of September 29, 1989, awarded some fees for this action to Sidlinger, Barack and others, reduced by ten percent as in the main proceeding and without a multiplier. Judge Moran awarded other costs and fees in his *Daniel* order that are not relevant for this appeal.

## II.

### A. *The Multiplier*

Initially, we must clarify our frame of reference. Fee awards are generally of two types—those pursuant to a statute that authorizes shifting fees, and those where the attorneys are compensated from a common fund won by the plaintiffs. This case falls in a third class because the award of fees is neither in accordance with a statute nor to be withdrawn from a sum that the plaintiffs have won. Instead, this case is a matter of contract interpretation—defendants and plaintiffs have agreed that plaintiffs' attorneys are to be paid by applying principles in the settlement, and the court's job is to interpret the contract's meaning.

We note in passing that the district court appears to have summed the non-*Daniel* time incorrectly at page 23 of its Memorandum and Order of April 6, 1989. The total listed there is $5,129,661.90, whereas our calculations indicate it to be $5,928,661.90. In addition, we assume that the $37,740 figure listed for Skirnick at page 23 of the Order should be $34,740, which is twice the lodestar figure of $17,370 mentioned at page 19.

At the outset, we therefore reject plaintiffs' argument that because this case is a common fund case, the Supreme Court's general prohibition of multipliers under fee-shifting statutes does not apply. *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987) (*Delaware Valley II*[3]). *Cf. Skelton v. General Motors Corp.*, 860 F.2d 250 (7th Cir.1989) (permitting contingency enhancement for common fund recovery because award is based on equitable powers and principles, not congressional intent), *cert. denied*, —— U.S. ——, 110 S.Ct. 53, 107 L.Ed.2d 22 (1989). Instead of classifying the case as "common fund" or "fee shifting," we must plumb the language of the settlement to determine its meaning and, if ambiguous, to determine the parties' intent.

The Fund, on the other hand, contends that *Delaware Valley II* is relevant under the "any other relevant federal court decisions based thereon" phrase. The argument holds that this phrase requires inclusion of subsequent decisions not only interpreting but perhaps altering the holdings of the four named cases. In *Delaware Valley II*, the Court, reviewing an award under the Clean Air Act's attorney's fees provision, 42 U.S.C. § 7604(d), by a plurality reversed the rule in eight circuits and held that a contingency multiplier was inconsistent with congressional intent. "[W]e are unconvinced that Congress intended the risk of losing a lawsuit to be an independent basis for increasing the amount of any otherwise reasonable fee for the time and effort expended in prevailing." 483 U.S. at 725, 107 S.Ct. at 3086. If *Delaware Valley II* governs the settlement, no risk multiplier could be awarded by the district court.

The plaintiffs' attorneys argue that *Delaware Valley II* is irrelevant for two reasons. First, they point out that the award in this case is not based on a fee-shifting statute as in *Delaware Valley II* but instead on the "factors" enumerated in the controlling cases. Second, they argue that only cases which apply the principles of the

named cases—not those that reverse them—are appropriate for the district court's consideration. Judge Moran excluded consideration of both more restrictive cases cited by the Fund and more expansive cases cited by plaintiffs:

> Fees were not left to the unfettered discretion of this court, consistent with whatever might now be the prevailing views about that matter. The settlement agreement provisions set forth the standards to be applied, and the [Fund] is obligated to pay and plaintiffs' attorneys are entitled to receive appropriate fees under those standards, no more and no less.

Mem. and Order at 8–9.

The Fund's position is inconsistent with the settlement. The settlement limited the discretion of the judge in determining the appropriate level of attorney's fees. For the judge later to consider cases overruling or changing the standards of the four named controlling cases would destroy the certainty for which both parties bargained. The phrase roping in "other relevant federal decisions" is perhaps inelegantly drafted, but the district judge clearly took the correct approach. "[D]ecisions based thereon" must be interpreted to include cases applying or interpreting the principles of the four named cases. *Delaware Valley II* therefore does not fall in the class of cases the settlement authorizes the judge to consider.

■  That aside, the settlement provides clear authority for including a risk multiplier. *In re Folding Carton* includes an enhancement for "the contingent nature of class action litigation." 84 F.R.D. at 263–67. *In re Cenco* holds that "the contingent nature of the litigation also weighs heavily in favor of increasing the lodestar route [sic], for there were inherent uncertainties in pursuing the claim...." 519 F.Supp. at 327. Likewise, *Lindy Bros.* authorizes consideration of "the contingent nature of success" and holds, in language significant

---

**3.** *Delaware Valley II's* predecessor, *Delaware Valley I*, authorized attorney's fees for work other than traditional litigation done under a consent decree but invalidated enhancement for

superior quality work. *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986).

for this case, that "this factor is of special significance where, as here, the attorney has no private agreement that guarantees payment even if no recovery is obtained." 487 F.2d at 168. Finally, *City of Detroit* approves taking into account the "risk of litigation" in adjusting the lodestar figure. 495 F.2d at 471.

Plaintiffs' argument on cross-appeal for an enhanced multiplier claims that *In re Folding Carton* and *In re Cenco* authorize a multiplier enhancement based upon public policy considerations, 519 F.Supp. at 327; 84 F.R.D. at 269, and that Judge Moran abused his discretion by not awarding a larger multiplier based on similar conditions in this case. Plaintiffs claim that benefits to Fund contributors and to the public generally and the difficulty of attracting attorneys for this type of case justify a higher multiplier. The class points expectantly to the multiplier of four awarded in *In re Cenco*, a securities fraud case resulting in one of the largest settlements in such cases in the Northern District of Illinois.

However, Judge Moran accounted adequately for public policy concerns in awarding a multiplier of two. He noted "that an immense amount of time would be devoted to the litigations over an extended period of time," that "[p]laintiffs' counsel sailed into largely uncharted waters," that "the end result was the recovery or enhancement of pensions for thousands of plan participants and the strengthening of the pension system in various respects" and that the "benefits for thousands of participants are themselves a conclusive demonstration of the public good served by the litigation." Mem. and Order at 20–21. *In re Cenco* clearly does not *mandate* a multiplier of four, and we see no abuse of discretion in Judge Moran's award of two.

In sum, the four named cases uniformly authorize a multiplier and the Fund offers no reason to decrease the multiplier of two. Judge Moran was within the bounds of his discretion.

B. *The Lodestar Figure*

■ The Fund also challenges the district court's determination of the lodestar figure. Calculation of the lodestar is the starting point for any award of attorney's fees. It represents the number of hours reasonably expended multiplied by the appropriate hourly rate. Once the lodestar is calculated, adjustments, where appropriate, increase or decrease the award in light of other factors.

The district court enjoys wide discretion here. Numbers of hours and reasonable rates are inherently factual matters that we review under a highly deferential abuse of discretion standard. *Ustrak v. Fairman*, 851 F.2d 983 (7th Cir.1988) ("If ever there was a case for reviewing the determinations of a trial court under a highly deferential 'abuse of discretion' standard, it is in the matter of determining the reasonableness of the time spent by a lawyer on a particular task in a litigation in that court."). At least one member of the court has established an olfactory response standard. *Parts and Elec. Motors, Inc. v. Sterling Elec., Inc.*, 866 F.2d 228, 233 (7th Cir.1988) ("[T]o be clearly erroneous, a decision must ... strike us as wrong with the force of a five-week old, unrefrigerated dead fish.") Even for those of us with clogged nostrils, findings must be "dead" wrong to be within reach.

The Supreme Court has explained how courts are to assess hours and fees:

The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services. The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. Where the documentation of hours is inadequate, the district court may reduce the award accordingly.

The district court also should exclude from this initial fee calculation hours that were not "reasonably expended." [Citation omitted.] Cases may be overstaffed, and the skill and experience of lawyers vary widely. Counsel for the prevailing party should make a good-

faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission.

*Hensley v. Eckerhart,* 461 U.S. 424, 433–34, 103 S.Ct. 1933, 1939–40, 76 L.Ed.2d 40 (1983).[4]

Judge Moran found that the plaintiffs' attorneys' recording practices may have compromised accuracy somewhat, and he reduced the allowed hours by ten percent. His reasoning was that

> this court is well aware that a delay in recording time often leads to its expansion. The attorney recalls that he worked all day on a certain matter and did not leave the office until very late. He does not recall the interruptions or the fifteen-minute diversions to handle other matters. The failure to keep contemporaneous time records must be recognized, and we do so by reducing the lodestar hours of Walner and his associates by 10 per cent.

Mem. and Order at 17. We find no explicit authority for the proposition that such a percentage reduction is impermissible as a matter of law. *Heiar v. Crawford County,* 746 F.2d 1190, 1204 (7th Cir.1984), *cert. denied,* 472 U.S. 1027, 105 S.Ct. 3500, 87 L.Ed.2d 631 (1985), could be read as prohibiting percentage fee reductions: "[W]here as in this case the request is for a large amount of money, here more than $50,000, the judge must do more than eyeball the request and if it seems excessive cut it down by an arbitrary percentage." However, Judge Moran did not merely "eyeball" the amount of the award. He examined the time records and both sides' arguments, and settled upon a ten percent reduction. *Heiar* does not prohibit percentage reductions; it establishes a "close look" requirement that must first be followed and that Judge Moran's findings meet.

Nonetheless, the Fund challenges Walner's and Sidlinger's time submissions on several related grounds: that Walner and Sidlinger failed to keep contemporaneous time records; that the records kept amounted only to rough estimates; that the inappropriate destruction of records prevented accurate assessments; that the Fund's reconstruction of time charges for Walner and Sidlinger indicated a propensity to "park" significant chunks of time on single days; and that other irregularities in billing judgment justify a greater reduction in the permitted hours. We briefly examine each objection.

■ The first is that Walner failed to keep contemporaneous records. Citing testimony from an unrelated fee allowance proceeding, the Fund argues that Walner's practice of recording time a day, a week or longer after the time was actually spent violates *Hensley*'s requirement of contemporaneous records. The district court found that the entries made were *accurate,* the primary concern of *Hensley.* We see no reason to upset Judge Moran's holding that this problem justifies no more than a ten percent reduction.

■ Second, the Fund argues that Walner's destruction of the original recordings of time (or the first "transcription" onto more permanent records thereafter) renders these hours unbillable because attorneys must retain such originals to substantiate the later submissions to the court. In the brief's words, "There was undisputed evidence that the 'transcription,' a credibility litmus test (whatever its contents) for the lodestar claims of Walner and Sidlinger, was destroyed, around the times in which the Fee Application was prepared." Appellant's Br. at 44. Adequacy of records is also a matter firmly in the district judge's province, and the Fund directs us to nothing in the record that suggests the judge's ruling abused his discretion. Neither do we find that the ten percent reduction failed to account adequately for this deficiency.

■ Third, the Fund claims that Sidlinger's and Walner's time charge practices

---

**4.** We note that the Court's hope that a "request for attorney's fees should not result in a second major litigation," *id.* at 437, 103 S.Ct. at 1941, has been dashed here.

lack credibility because they appeared to "park" significant chunks of time on certain days. For support, the Fund prepared two reports detailing Walner's and Sidlinger's time charges for all days in which at least ten (in Sidlinger's case, eleven) hours of time are claimed. It is not entirely clear what inference the Fund would like us to draw from these compilations except that "[i]t appears that the district court found this reconstruction evidence to be entirely lacking in probative value." Appellants' Br. at 47. This is not compelled by the record. Indeed, the district court appears to have considered this evidence directly:

> The Fund complains that the records it can piece together indicate that Walner had many heavy-hour days during the past 13 years or so, including two days with 20 hours or more and 438 days with ten hours or more of which apparently 274 were devoted in whole or in part to *Dutchak.* That suggests to the Fund that Walner was intentionally overstating his time. The argument is overstated—long days from time to time because of deadlines or business trips is an occupational hazard, and the number here is not all that uncommon when related to the entire time span.

Mem. and Order at 16–17. Because we again see no reason that the judge's decision to reduce by ten percent does not adequately account for this irregularity, we find no abuse of discretion.

Finally, the Fund challenges the "billing judgment" of Walner and Sidlinger, pointing to its extensive objections to time submissions based on alleged "duplication of charges grossly disproportionate to known legal productivity." All of these challenges were duly considered by the district court, and no abuse of discretion is apparent.

### III.

Judge Moran has overseen this case for about twelve years and is therefore intimately familiar with the demands placed on counsel, the legal issues involved and the complexity of the work performed. Without compelling justification, we are hesi-

tant to upset his findings, especially as they concern the construction of the lodestar figure. Judge Moran did not violate standard practices for determining fee awards, such as those announced in *Hensley* and *Ohio–Sealy Mattress Mfg. Co. v. Sealy, Inc.,* 776 F.2d 646 (7th Cir.1985). He interpreted the settlement according to its terms and in accord with the parties' intent. This long-lived litigation may finally be at its end, for in all respects the district court decision is

AFFIRMED.