Abraham **EGERT** and Christine
Kraft–Egert, Plaintiffs,

v.

**CONNECTICUT GENERAL LIFE
INSURANCE COMPANY,**
Defendant.

No. 88 C 5698.

United States District Court,
N.D. Illinois, E.D.

June 7, 1991.

Steven Saltzman, Law Office of Steven Saltzman, Terence E. Flynn, Gessler Flynn Laswell Fleischmann Hughes & Socol, Chicago, Ill., for plaintiffs.

James A. Hardgrove, Jean F. Holloway, Sidley & Austin, Gregory G. Lawton, Modesto, Reynolds & McDermott, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

ANN C. WILLIAMS, District Judge.

In 1988, plaintiffs Abraham Egert and Christine Kraft–Egert brought an ERISA action against defendant Connecticut General Life Insurance Company, challenging the carrier's decision that plaintiff's in vitro fertilization (IVF) was not covered under the plan. Petitioners Steven Saltzman and Terence Flynn, counsel for the plaintiffs, seek attorneys fees, and costs pursuant to 29 U.S.C. § 1132(g)(1) as a result of a judgment entered in their favor on August 30, 1990. Defendant argues against both the request for fees, and the specific amount of fees requested by plaintiffs' attorneys. For the reasons explained petitioners request for fees is granted. The defendant does not contest the plaintiffs' request for costs of $3,553.20. The court has reviewed the petition for costs, and that request is also granted.

### Discussion

ERISA's section on awarding attorney's fees, § 1132(g)(1), states that "[i]n any action under the subchapter by a participant, beneficiary or fiduciary, the Court in its discretion may allow reasonable fees and costs of action to either party." The courts recognize that while an award of fees under ERISA is not required, it is expected absent special circumstances which would make an award unjust. *Smith v. Retirement Fund Trust,* 857 F.2d 587, 592 (9th Cir.1988); *See also, Davis v. Chicago Municipal Employee Credit Union,* 891 F.2d 182, 184 (7th Cir.1989).

The first issue to consider when awarding fees is whether the party seeking fees has prevailed, and it is clear that the plaintiffs did prevail in this action. *See Egert v. Connecticut General Life Insurance,* 900 F.2d 1032 (7th Cir.1990). In addition, the Seventh Circuit has approved the use of five factors to consider whether a prevailing plaintiff is entitled to fees in an ERISA benefit determination case. *Bittner v. Sadoff & Rudoy Industries,* 728 F.2d 820, 828 (7th Cir.1984) These factors are:

(1) The degree of the offending parties' culpability or bad faith; (2) the degree of the ability of the offending party to satisfy personally an award of attorney's fees; (3) whether or not an award of attorney's fees against the opposing parties would deter other persons acting under similar circumstances; (4) the amount of benefit as a whole; and (5) the

relative merits of the parties' positions. *Id.*

All five factors need not be present for the court to award fees to the prevailing party. *Bradley v. Capital Engineering and Mfg. Co.,* 678 F.Supp. 1330, 1335 (N.D.Ill.1988).

■ The first factor supports the award of fees. The court agrees that Connecticut General has culpability in this case, even though its culpability may not rise to a legal standard of bad faith. Under the Employee Benefit plan, employees and their spouses were entitled to be reimbursed when "services or supplies provided are recommended by a Physician and are essential for the necessary care and treatment of an Injury or a Sickness." The Seventh Circuit found that the Plan required Connecticut General to authorize payments for Kraft–Egert's IVF treatment, and that the denial of coverage for the IVF treatments was arbitrary and capricious in light of the Plan's coverage for other services related to infertility. *Id.* at 1037–1038. In light of this ruling, there is no question but that Connecticut General's is culpable for violating the Plan by refusing coverage for the IVF treatments. The defendant's argument that its denial of coverage amounts to a difference of opinion regarding coverage, is not persuasive.

The second factor also weighs strongly in favor of an award of fees. As the defendant itself recognizes, Connecticut General is a large insurance company. There is no indication that the defendant would be unable to pay reasonable attorney's fees here, while the plaintiffs have testified that they lack sufficient resources to pay their attorney's fees. *See Bradley v. Capital Engineering and Mfg. Co.,* 678 F.Supp. 1330, 1335 (N.D.Ill.1988), and Christine Kraft–Egert Deposition, Ex. Q.

The third factor, whether an award of fees would deter others acting under sim-

ilar circumstances, also supports an award of fees. While Connecticut General's offer to reimburse the plaintiff for two IVF treatments was admirable, this offer does not preclude an award of fees in favor of the petitioners. Fees are justified in this case because the possibility of paying attorney's fees may well deter plan administrators from developing unreasonable interpretations of ERISA plans as a means of wrongfully denying coverage to plan participants. *Bradley,* 678 F.Supp. at 1335.[1]

The fourth factor is whether plaintiffs sought to benefit ERISA beneficiaries, or sought to resolve a significant legal question under ERISA. The court agrees that this lawsuit benefited ERISA plan participants generally, in that the *Egert* decision "struck a blow" against inconsistent denials of medical coverage. Second, the decision clearly benefits any other plan participants who were denied coverage for IVF treatments by Connecticut General. Finally, the decision helped to broaden the scope of relief available under ERISA. The petitioners argue, and the defendant does not contest, that this is the first case in which specific performance relief has been granted to a plaintiff in a benefits discrimination case.[2]

The court finds that the fifth factor, the relative merits of the parties positions, does not strongly support an award of fees, since the court believes that the position of both parties had merit. Nonetheless, in light of the fact that four out of the five factors considered support an award of fees in plaintiffs' favor, the motion for attorney's fees will be granted. The court must now determine what fees the petitioners are entitled to recover.

### Calculation of Fees

■ As the petitioners note, the determination of what constitutes a reasonable at-

---

1. Further, as the plaintiffs' attorneys point out, defendant's reliance on *Air Line Pilots v. United Air Lines,* 663 F.Supp. 281 (N.D.Ill.1987), to avoid the request for fees, is misplaced. The court's decision not to impose fees in that case was greatly influenced by the fact that the case was not resolved on its merits.

2. As the petitioners rightly explain, such relief is important because it prevents a plan administrator from being immunized for unlawfully denying coverage for a treatment by later seeking to avoid its obligation to provide coverage on a prospective basis by simply amending the Plan to expressly exclude such coverage after an adverse court decision.

torney's fee is initially determined by calculating a lodestar amount. *Hensley v. Eckerhart*, 461 U.S. 424, 427, 103 S.Ct. 1933, 1936, 76 L.Ed.2d 40 (1983). That amount is then calculated by multiplying the number of hours reasonably spent on the litigation times, a reasonable hourly rate. *Id; Dutchak v. Central States, Southeast and Southwest Areas Health and Welfare Fund*, 932 F.2d 591, 596 (7th Cir.1991).

The petitioners' lodestar amount is based on the following calculations:

Law Offices of Steven Saltzman

Steven Saltzman 288.6 hrs/$175 per hour = $50,505

Gessler, Flynn, Fleischman, Hughes & Socol Ltd.

Terence Flynn 145.3 hrs/$175 per hour = $25,427.50

The lodestar amount sought for attorneys' fees is $50,505 for Steven Saltzman, and $25,427.50 for Terence Flynn. In addition, plaintiffs' attorneys seek a multiplier of two for risk enhancement, and reimbursement of $600 for the fee of plaintiffs' expert witness at trial. Plaintiff's attorneys also seek fees for preparing this petition.

■ The defendant raises a number of general objections to petitioners' lodestar calculations. Defendant's first argument is that the hourly rate of $175 per hour is unreasonable, and higher than the usual and customary rate charged in Chicago. This argument is unpersuasive, 'nce the defendant's argument is unsupported by any competent evidence. In contrast, petitioners support their request for an hourly rate of $175 with a great deal of evidence.[3] "Customary rates for similar work in the community" serve as a guide to what rate is reasonable. *Blum v. Stenson*, 465 U.S. 886, 895–896, 104 S.Ct. 1541, 1547, 79 L.Ed.2d 891 (1984). The petitioners have submitted several affidavits from other attorneys in the Chicago area stating that the requested hourly rate is reasonable, and perhaps even modest given the petitioners' experience and credentials.

Steven Saltzman is a 1974 law school graduate with exceptional credentials. Mr. Saltzman is an experienced litigator who has specialized in the fields of civil rights, employment discrimination, labor and pension fund litigation. Mr. Saltzman specializes in complex cases, and has achieved notable successes throughout his seventeen years of practice. In support of his petition, Mr. Saltzman submitted an affidavit stating that his billing rate in 1988 was $150 per hour, and that in 1990 he raised his rates to $175 per hour. Similarly, Terence Flynn is a 1975 law school graduate with exceptional credentials. He has also achieved a great deal of success throughout his years of practice. Mr. Flynn is a founding, and name partner of the Chicago law firm of Gessler, Flynn, Fleischman, Hughes & Socol. Further, Mr. Flynn is an experienced litigator, who has worked on a number of complex cases. Mr. Flynn submitted an affidavit stating that he charges new clients at the rate of $175 per hour, and that he has charged some clients at the rate of $175 per hour since 1988.

The court also notes that plaintiffs' attorneys took this case on a contingent fee basis, after receiving a retainer of only $2000. In light of the attorneys' experience, and the evidence that Chicago attorneys with similar experience would charge their clients as much, or more, the court finds that the requested rate of $175 per hour is reasonable.

Having determined that the requested rate is reasonable, the court must now determine whether the number of hours plaintiffs' attorneys seek to be compensated for is reasonable. The total lawyer time devoted to this action amounted to 433.9 hours, over a 2 year period. Defendants argue that the number of hours put into the case is extraordinary. The defendant also contends that two attorneys were not needed to prepare and attend a one day trial of the case, and that two attorneys were not needed at the reading of the verdict or appellate argument of this case. The defendant also argues that it should

---

**3.** The court agrees that current (not historical) market value is the standard for determining the reasonableness of the requested hourly rate.

*Bennet v. Central Telephone Co. of Illinois*, 619 F.Supp. 640 (N.D.Ill.1985).

not bear the expense for two attorneys reviewing and conferring over one another's work. Finally, the defendant argues that the petitioners have not omitted hours which were spent on their unsuccessful claim for statutory damages under Illinois law.

The court has reviewed the time records submitted in this case, as well as the record submitted before this court and the case record on appeal. The court notes that trying this case required a full complement of written discovery, and the taking of several depositions. In addition, plaintiffs' attorneys filed several motions to compel, as well as other motions, attended numerous court dates and pre-trial conferences, prepared a pretrial order for a more extensive trial than actually occurred, argued the case at trial, and finally prepared briefs for and argued the case on appeal.

The number of hours expended by the attorneys in representing the plaintiffs in this case are not unreasonable. In reviewing the petition, the court finds that the attorneys have exercised great care to deduct time which reasonably could be regarded as a duplication of effort. Also worth noting is the fact that Mr. Flynn has deducted all billable time for any personnel utilized at his firm other than himself. The court does not believe that the defendant is being overcharged for the attorneys' services.[4]

The defendant argues that the petition for fees is excessive because the petitioners have not deducted time spent on plaintiffs' state claim against Canteen's administrator, Pelipoda, who was not found liable. The court finds that this argument is misplaced. First, the court agrees that the petitioners were not required to deduct time spent on the unsuccessful state claim because this claim sought the same relief as their successful claim. *Hensley v. Eckerhart*, 461 U.S. 424, 440, 103 S.Ct. 1933, 1943, 76 L.Ed.2d 40 (1983)[5]; *Spanish Action Committee of Chicago v. City of Chicago*, 811 F.2d 1129, 1133 (7th Cir.1987).

In the instant case, both plaintiffs' ERISA claim, and the pendant state claims involved a common core of operative facts, or were based on related legal theories, such that counsel's time (when researching these claims) was devoted to the litigation as a whole. Plaintiffs' attorneys did not need not to separate hours spent on the successful ERISA claim from those hours expended solely on the state claims. Nonetheless, the court notes that plaintiffs' attorneys have already deducted the time spent on the pendant state claim, so defendant's argument is meritless. *See*, Exhibits A–1 and B–1. The lodestar requested by petitioners is granted. Petitioner Saltzman will be awarded a lodestar amount of $50,505 (288.6 × $175/hour), and petitioner Flynn is awarded a lodestar amount of $25,427.50 (145.3 hours × $175/hour).

### The Multiplier

The court must next determine whether allowing a multiplier is appropriate in this case. Petitioners contend that they should be awarded a contingency multiplier of two, while the defendants argue that the plaintiffs are not entitled to any multiplier at all.

---

**4.** The court will briefly address defendant's argument that two attorneys were not needed to prepare and attend a one day trial of this case, the reading of the verdict at the trial level, or to attend oral argument. These arguments are not compelling. Cases are often argued by and prepared by far more than two attorneys. It was not unreasonable for both attorneys to prepare for and attend trial, or to prepare for and attend oral argument. Indeed, both attorneys had a duty to ensure that they were prepared to present their clients' case in the best light possible. Further, the court notes that in the instant case, the plaintiffs' lawyers have taken great pains to assure that the fee petition does not include any duplicative hours.

**5.** The *Hensley* Court explained:

Where the plaintiff has failed to prevail on a claim, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee. Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fees reduced simply because the district court did not adopt each contention raised. *Hensley*, 461 U.S. at 440, 103 S.Ct. at 1943.

In order to justify a request for risk enhancement the fee applicant must show that "without an adjustment for risk the prevailing party would have faced substantial difficulties in finding counsel in the local or other relevant market." The law also requires any enhancement to reflect "the difference in market treatment of contingent fee cases as a class rather than the riskiness of any particular case." *Pennsylvania v. Delaware Valley Citizens Counsel*, 483 U.S. 711, 731, 107 S.Ct. 3078, 3089, 97 L.Ed.2d 585 (1987) (O'Connor, J., concurring). In determining if a multiplier is appropriate, the class of cases into which a case falls must be considered, not the risks of the particular case before the court.

Plaintiffs have provided affidavits from a number of Chicago attorneys attesting to the fact that a significant multiplier is a necessary incentive to ensure the availability of counsel for ERISA actions like the present case. These attorneys have represented plaintiffs in ERISA cases, and include firms who generally do not take on such cases on a contingency basis because of the risk of low return. In addition, petitioners cite *Hickerson v. Velsicol Chemical Corp.*, 81 C 2543, 1989 WL 20843 (N.D.Ill.1989), an ERISA class action case, where the court awarded a multiplier of 1.75 to the prevailing attorneys.

In the instant case, plaintiff's attorneys skillfully represented their clients. They lost their case at the trial level, but prevailed on appeal, both for the benefit of their clients and other ERISA beneficiaries. Based on the affidavits and the court's knowledge of litigation in this court house and city, the court finds a 100% multiplier to be appropriate.[6] Fees awarded to Saltzman are 2.0 times attorney's lodestar's of $50,505, which is $101,010, plus a lodestar of $3,622.50 (based on 20.7 hours × $175) for his work in preparing the original petition, and $1400 for his work on the reply

brief (8 hrs × $175). Total fees awarded to Saltzman are $106,032.5. Flynn is awarded fees of 2.0 times a lodestar of $25,427.50 for a total of $50,855, plus a lodestar of $1,820 (10.4 × $175) for his work on the original fee petition, and $1,050 (6.0 × $175) for his work on the reply brief. Total fees awarded to Flynn are $53,725.

Plaintiffs are awarded costs of $3,553.20. Plaintiffs request an additional $600 as reimbursement for the cost of their expert witness. In light of the Supreme Court's recent decision in *West Virginia University Hospital, Inc. v. Casey*, —— U.S. ——, 111 S.Ct. 1138, 113 L.Ed.2d 68 (1991), plaintiffs' request for reimbursement for these fees is denied.

### Conclusion

For the foregoing reason, petitioners' request for fees and costs is granted.

---

6. In granting the petitioners' request for a multiplier of two the court is also influenced by the fact the plaintiffs' attorneys worked for two years without any fee aside from the $2000 retainer. and the fact that plaintiffs' attorneys achieved significant results both for their clients and for other ERISA beneficiaries. *Dutchak*, 932 F.2d 591, 595–596 (7th Cir.1991).